## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02556-WJM-MJW

RAMIN SHAHLAI, on his own behalf and
On behalf of all other similarly situated,

Plaintiff,

v.

COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC,

Defendant.

---

### JOINT MOTION FOR PRELIMINARY APPROVAL OF REVISED SETTLEMENT AGREEMENT

---

Pursuant to the Court's August 15, 2018 Order [Doc. 37], Plaintiff Ramin Shahlai

("Plaintiff") and Defendant Comcast Cable Communications Management, LLC

("Defendant") (together, the "Parties") hereby jointly move for preliminary approval of the

revised Settlement Agreement and Final Release (the "Settlement Agreement"),

attached as Exhibit 1.

### I.    FACTS AND PROCEDURAL HISTORY

On October 13, 2016, Plaintiff Ramin Shahlai filed a complaint on behalf of

himself and other similarly-situated employees of Plaintiff's former employer, Icon

Cable, Inc. ("Icon Cable"), asserting claims under the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201, et seq., and the Colorado Minimum Wage of Workers Act

("CMWWA"), C.R.S. §§ 8-6-101, et seq.  [See Doc. 1 (Compl.); Doc. 21 (Am. Compl.)

¶¶ 3-5].  The complaint alleges, among other things, that Icon Cable "failed to reimburse its cable technician employees for vehicle and tool expenses, and deducted sums from its employees' paychecks for employer-provided tool costs."  [Doc. 21 ¶¶ 1-2]. Plaintiff alleges that, as a result, Icon Cable "paid its employees less than the federal and Colorado minimum hourly and overtime wage rates." [Doc. 21 ¶ 3].

Plaintiff claims that Comcast—a provider of cable, high-speed internet, and digital voice services which contracted with Icon Cable to provide cable installation services to Comcast customers—is liable for now-defunct Icon Cable's wage and hour violations as a "joint employer" under the FLSA. [See Doc. 21 ¶¶ 1, 24].  Comcast denies that it is, or ever was, an employer or joint employer of any Icon Cable technician, including Plaintiff. [Doc. 30 (Answer) ¶¶ 1, 24].

At the outset of litigation, this Court granted the Parties' request to bifurcate discovery "into an initial discovery period on the issue of whether Comcast is Plaintiff's joint employer, followed by summary judgment briefing on that issue."  [Doc. 28 (Scheduling Order) § 6(h)]. The Parties thereafter engaged in extensive discovery on the joint employment issue, including, among other things, the production and review of thousands of pages of documents, numerous depositions, and discovery motions.  The Parties also obtained discovery directly from Icon Cable.  Although discovery was focused on the "joint employment" issue, for the purposes of settlement discussions, the parties also obtained some damages-related discovery from Icon Cable, including the mileage Mr. Shahlai drove while performing his installation work and pay records for all of Icon Cable's employees. As a result of discovery, the Parties have determined that:

a. Icon Cable employed approximately 63 cable installation technicians during the time period relevant to Plaintiffs' Rule 23 claims;

b. Icon Cable employed approximately 95 cable installation technicians during the time period relevant to Plaintiffs' Fair Labor Standards Act Claims ;

c. Using Icon Cable's records, the Parties could reasonably approximate the average weekly vehicle expenses of Icon Cable's technicians; and

d. Using Icon Cable's employee earnings records for that time period and the average weekly vehicle expenses, the Parties could reasonably approximate each technician's alleged damages.

With this information, the Parties engaged in an arm's-length settlement negotiation led by experienced counsel. After many rounds of negotiations, the Parties arrived at reasonable estimates of alleged damages for Plaintiff and the class of Icon Cable technicians proposed by Plaintiff, which informed a fair and reasonable settlement amount.

On February 23, 2018, the Parties filed their Joint Motion for Conditional Certification of Class and Preliminary Approval of Settlement Agreement [Doc. 68]. By Order dated August 15, 2018, the Court granted the Parties' motion in part and denied it in part. [Doc. 73]. The Court granted preliminary certification of the Rule 23 and Fair Labor Standards Act classes alleged and described by the Parties' agreement. [Doc. 73 at 12-13]. The Court rejected, however, the Parties' proposed notice procedure, which attempted to streamline and consolidate Rule 23 and FLSA Collective Action notice. [Id. at 13-14]. The Court ordered that the Parties segment the FLSA and Rule 23 notice procedures, first issuing notice to potential FLSA opt-in Plaintiffs and permitting them to join the case before sending out notice to potential Rule 23

members.  [Id. at 12-14].  The Court noted the importance of permitting opt-in Plaintiffs

to participate in the settlement of the case after having opted-in.  [Id.].

Pursuant to the Court's order, the Parties filed a proposed Fair Labor Standards

Act Notice and Consent to Join Form [Doc. 74], which the Court approved on October

17, 2018. [See Doc. 75].  On November 18, 2018, the Settlement Administrator issued

notice to the potential FLSA Collective Action opt-in Plaintiffs via mail.  [See Doc. 76].

The Court-approved notice advised these potential opt-in Plaintiffs that they had until

January 15, 2019, to join the litigation by returning their notice to the Settlement

Administrator.  [Doc. 75-1 at 4].  The seven individuals named in paragraphs 1.12 and

4.5(a) of the revised Settlement Agreement returned ratified forms to the Settlement

Administrator, opting in to this action.  See Ex. 1 pgs. 4, 9.  Each of these opt-in

Plaintiffs has consulted with Plaintiffs' counsel and individually assented to the revised

Settlement Agreement attached hereto as Exhibit 1.  See Id. pgs. 32-37.  The Parties

now move for the preliminary approval of their revised Settlement Agreement.

## II.  SUMMARY OF THE SETTLEMENT TERMS

### A.  Settlement Background and Procedure

The Settlement Agreement provides that, for purposes of settlement only, the

Parties agree to conditionally certify the two classes pled in the operative Complaint.

Plaintiff has alleged a FLSA collective action composed of:

All Icon Cable employees who worked as cable installation technicians between

October 13, 2013 and April 26, 2016.

[Doc. 21 ¶ 25.]

Plaintiff has also alleged a Rule 23 class consisting of:

> All Icon Cable employees who worked as cable installation technicians between October 13, 2014 and April 26, 2016.[1]

[Id. ¶ 29.] The Court has already granted preliminary certification of these Classes. [Doc. 73 at 12-13].

Should this Court preliminarily approve the revised Settlement Agreement, the Settlement Administrator will send the Class Notice[2] to each Rule 23 Class Member. The Class Notice informs each Rule 23 Class Member of the basic terms of the Settlement Agreement. The Settlement Agreement also establishes a procedure for Rule 23 Class Members to object to or opt out of the action for purposes of settlement.

Following the close of the Opt-out Period, the Parties will jointly move for Final Approval of the Settlement Agreement. The Settlement Administrator will mail Settlement Checks to FLSA opt-in plaintiffs and Rule 23 Class Members who do not opt out of the Settlement within 7 days after any appeal of this Court's Final Approval of the Settlement Agreement is either resolved or time barred.

---

[1]     Icon Cable technicians were required to complete a two- to four- week training program before being assigned field work. During that time, the technicians were confined primarily to Icon Cable's office, and, if training extended into the field, the trainee was required to ride along with a senior cable installation technician. No trainee drove their personal vehicle and would therefore have suffered no damages during training.  A handful of trainees did not finish the probationary training program. Because these individuals earned $10 per hour (i.e., a rate above minimum wage) during training and did not incur vehicle expenses, those who never finished training are not included in the Class.

[2] Capitalized terms used in this Joint Motion have the same meaning as in the Settlement Agreement.

**B.      Settlement Terms**

The Settlement Agreement provides that Comcast will make a non-reversionary

settlement payment of $144,250.00 (the "Settlement Amount"), which shall fully resolve,

satisfy and encompass: (1) a total Class Fund of $60,000 that includes cash payments

to Class Members, FLSA Settlement Payments to the seven opt-in Plaintiffs who present

FLSA Claims, attendant taxes on those payments, the Settlement Administrator's fees

and expenses (estimated at $7,000), and a reasonable Service Award to the Named

Plaintiff ($5,000); and (2) Class Counsel's fees and expenses, including all attorney's

fees and expenses incurred to date and to be incurred in preparing settlement

documents, securing trial and appellate court approval of the settlement, attending to

the administration of the settlement and obtaining dismissal of the action with prejudice

($84,250). Ex. 1 at 4.1-4.8.

Each Class Member will receive a share of the Net Settlement Amount (as

defined by the Settlement Agreement) proportionate to his or her estimated alleged

damages.  *Id* at 4.5.

**C.      Settlement Methodology**

**Estimated Mileage Expenses**. The parties were unable to calculate the

individualized mileage actually driven by each of the technicians in the Class, as only

Mr. Shahlai's customer mileage information was obtained in the first phase of this case

(the first phase being limited to discovery to "joint employment"- related issues).

Nevertheless, the parties were able to come to an approximate estimate of the mileage

driven by Mr. Shahlai in the course of his installation work by using the customer

addresses from homes where Mr. Shahlai provided cable installation services.

Specifically, using these addresses and Google Maps, Comcast's counsel determined

that Mr. Shahlai drove an average of 40 miles per day during the course of his

installation work; assuming, for the purposes of settlement, that he was entitled to 56

cents per mile, and worked 5 days a week, his average weekly mileage expenses were

approximately $112.00 per week.  This amount was adjusted to $125.00 per week to

account for the fact that Mr. Shahlai was a relatively new employee and may have

served fewer households in his average workday than a more experienced and efficient

technician would have.  (See Ex. 2, Turner Aff ¶14).  Although $125.00 represents a

reasonable estimate, the parties believe it also represents greater mileage expenses

than were actually incurred by Class Members for several reasons.  First, Icon provided

five to seven operational work vans for employees to use, such that some employees

were not using their personal vehicles in the course of their work and bore no expenses

at that time; however, no records were kept indicating which employees drove Icon's

vans and which drove work vehicles, so the parties assumed that all technicians drove

their own vehicles while performing work. *Id.*  Additionally, the $125 estimate assigns

credit for vehicle expenses every week, even though there were some weeks in which

employees worked significantly less than 40 hours (such that it is likely incorrect that

they worked long enough to drive approximately 40 miles per day).  *Id.*

     **Estimated Settlement Shares.** To estimate each class members' settlement

share, the Parties utilized payroll data from Icon Cable's employee payroll records,

dated October 1, 2013 to April 26, 2016, when Icon Cable ceased operations.  These

records provided accurate information regarding the numbers of hours worked by

individual employee Class Members, including overtime hours; this data permitted the

parties to calculate the minimum wage each Class Member should have been paid

under the state or federal minimum wage applicable during that workweek. Ex. 2,

Turner Decl. ¶ 14. The parties also determined what each Class Member actually

earned in light of the amount they had to pay out-of-pocket, on average, for mileage

expenses, by taking the amount they actually earned from Icon and subtracting $125

per week in average mileage expenses. *Id.* Finally, to calculate estimated total alleged

damages, the parties subtracted Class Members' actual earnings from the required

statutory minimum and overtime wage due; this difference represents their total

estimated alleged damages. *Id.* Pursuant to this formula, the parties have calculated

Rule 23 Class Members total potential actual damages to equal $49,097.37. *Id.* While

the Rule 23 class and state law claims capture the time period between October 13,

2014 and October 13, 2016,[3] Plaintiffs' Complaint alleges willful violations of the Fair

Labor Standards Act and therefore a FLSA statute of limitations extending from October

13, 2013 through April 26, 2016.  29 U.S.C. § 255(a). Class Counsel reviewed Icon

Cable's payroll and determined that the seven FLSA Collective Action members are

entitled to full FLSA damages (inclusive of liquidated damages) in the total amount of

$13,379.99.  Ex. 2, Turner Decl. ¶15.   The non-reversionary Class Fund from which

class members will be paid will contain $60,000.00, and should retain approximately

---

[3]     On April 23, 2016, Icon Cable ceased operation, and ceased employing the Class Members.  No damages accrued after that date.

$29,932.33 after payment of all FLSA damages to the opt-in Plaintiffs and related taxes,

requested reductions for class administration costs, and a Plaintiff incentive award.  Ex.

1 at 4.5.  After payment of these expenses, the Class Fund will contain 70.58% of the

total potential damages the Class suffered.[4]

## III.   <u>LEGAL ARGUMENT</u>

A class action under Rule 23 may not be dismissed, compromised, or

settled without the approval of the Court. Fed. R. Civ. P. 23(e). The object of

preliminary approval is for the Court "to determine whether notice of the proposed

settlement should be sent to the class, not to make a final determination of the

settlement's fairness. Accordingly, the standard that governs the preliminary

approval inquiry is less demanding than the standard that applies at the final

approval phase." Newberg § 13:13; <u>see also Lucas v. Kmart Corp.</u>, 234 F.R.D.

688, 693 (D. Colo. 2006) ("The purpose of the preliminary approval process is to

determine whether there is any reason not to notify the class members of the

proposed settlement and to proceed with a fairness hearing"); <u>In re Motor Fuel</u>

<u>Temperature Sales Practices Litig.</u>, No. 07–MD–1840, 2011 WL 4431090, at *5 (D.

Kan. Sept. 22, 2011) (internal quotation omitted) ("The Court will ordinarily grant

preliminary approval where the proposed settlement appears to be the product of

---

[4]     Despite a notice plan designed to provide notice to a high percentage of class
members, and which will mail a check directly to those who do not opt-out, the Plaintiffs
do not anticipate that more than 40% of class members will claim by cashing the checks
they are sent. [<u>See</u> Doc. 68-4 ¶ 5].  The parties believe that the settlement is adequately
funded to fully compensate all participating class members.

serious, informed, non-collusive negotiations, has no obvious-deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."). If the settlement is preliminarily approved, the Court enters a preliminary approval order directing the preparation of notice to class members and setting forth a schedule for objections. NEWBERG § 13:12.

## A.     The Proposed Settlement Agreement is Fair and Reasonable.

In actions involving FLSA claims, such as the one here, "the parties must present any proposed settlement to the district court for review and a determination of whether the settlement agreement is fair and reasonable." Morton v. Transcend Servs., No. 15-cv-01383-PAB-NYW, 2017 WL 977812, *1 (D. Colo. March 13, 2017) (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982)).  Approval should be granted when: "(1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees." Id. (citing Lynn's Food Store, 679 F.2d at 1354). As discussed below, all three elements are satisfied, and therefore the Court should preliminarily approve the Settlement Agreement.

### 1.     A Bona Fide Dispute Exists Between the Parties.

Parties "requesting approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists." Id. (citing Dees v. Hydradry,Inc., 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010)).  "To meet this

obligation, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." Id. (citing Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714, 718 (E.D. La. 2008)).

In this case, Plaintiff filed a complaint on behalf of himself and other similarly-situated Icon Cable employees asserting claims under the FLSA and the CMWWA. During the relevant time period, Comcast contracted with Icon Cable to perform cable installation and upgrade work in Comcast customer homes. Icon Cable paid its cable installation technicians the statutory minimum wage but, as Plaintiff alleges in the Complaint, "failed to reimburse its cable technician employees for vehicle and tool expenses, and deducted sums from its employees' paychecks for employer-provided tool costs" [Doc. 21 ¶¶ 1-2], which Plaintiff alleges resulted in Icon Cable paying its employees "less than the federal and Colorado minimum hourly and overtime wage rates." [Doc. 21 ¶ 3]. Although it is undisputed that Comcast did not directly employ Plaintiff when the alleged violations occurred, Plaintiff alleges that Comcast exerted sufficient control over the employment of Icon Cable's direct employees such that it should be liable for Icon's alleged wage and hour violations as a "joint employer" under the FLSA. [See Doc. 21 ¶¶ 1, 24]. Comcast disputes that it was a joint employer of Icon Cable's employees. Moreover, based on records provided by Icon Cable and

testimony of an Icon Cable corporate representative, Comcast disputes that any Icon Cable technician was paid less than the applicable minimum wage.

To address the threshold issues of liability, the Parties agreed to bifurcate the litigation, with the sole focus of the first stage of litigation being whether Comcast was a joint employer under the FLSA during the relevant time period. Because there is a split among Circuits regarding the proper legal standard for joint employment under the FLSA, the parties genuinely dispute whether Comcast was a joint employer as both a legal and factual matter.

Not only do the Parties contest whether Comcast was a joint employer and whether Class Members are owed any amounts for unpaid wages, but, assuming for the sake of argument only that this case were to proceed to the next stage of litigation, numerous other issues of genuine dispute exist between the Parties, including, but not limited to:

(i)     the applicable statute of limitations;

(ii)    whether and to what degree class members suffered any damages;

(iii)   the proper method for calculating actual damages; and

(iv)    whether class members are entitled to liquidated damages.

The Court should therefore grant this Joint Motion because bona fide legal and factual disputes exist, and settlement will fairly resolve these disputes without having to engage in costly litigation.

      **2.**     **The Settlement Agreement is Fair and Reasonable.**

An FLSA settlement must be fair and reasonable. <u>Morton</u>, 2017 WL 977812, at

*2. A settlement is fair and reasonable if it provides "adequate compensation to the

employees and [does] not frustrate the FLSA policy rationales." <u>Id.</u> When evaluating

whether a settlement agreement meets this standard, the Tenth Circuit considers the

following factors: "(1) whether the parties fairly and honestly negotiated the settlement;

(2) whether serious questions of law and fact exist which place the ultimate outcome of

the litigation in doubt; (3) whether the value of an immediate recovery outweighs the

mere possibility of future relief after protracted litigation; and (4) the judgment of the

parties that the settlement is fair and reasonable." <u>Id.</u> (citing <u>Rutter & Wilbanks Corp. v.

Shell Oil Co.</u>, 314 F.3d 1180, 1188 (10th Cir. 2002)).  All of these factors weigh heavily

in favor of this Court approving the Settlement Agreement in this case.

<u>First</u>, the Parties fairly and honestly negotiated the settlement.  The Parties each

were represented by experienced counsel in the negotiations.  The Parties vigorously

litigated this matter for two years before reaching settlement, reviewing thousands of

pages of documents regarding the relationship between Icon and Comcast, litigating

multiple motions to compel discovery, and taking several depositions, including of

Comcast's and Icon Cable's corporate representatives.  The Parties also relied on

accurate payroll information provided by Icon Cable during discovery to inform their

discussions as to a fair and reasonable amount for Class Members' alleged damages.

Experienced counsel on both sides agree that the settlement is fair and reasonable and

in the best interests of their clients.

Second, questions of law and fact exist which place the ultimate outcome of the litigation in doubt. Plaintiff contends that Comcast exercised sufficient control over Icon Cable to qualify as a "joint employer" under the FLSA and CMWWA. Comcast denies Plaintiff's allegations, and contends that applicable legal authority supports its position. See, e.g., Jacobson, et al. v. Comcast Corp., et al., 740 F. Supp. 2d 683 (D. Md. 2010) (granting Comcast's motion for summary judgment and holding that Comcast was not a joint employer of employees who worked for a vendor contracted by Comcast to provide cable installation services). See also Jean-Louis v. Metro. Cable Commc'ns, Inc., 838 F. Supp. 2d 111, 131 (S.D.N.Y. 2011) (granting Time Warner Cable's motion for summary judgment and holding that Time Warner was not a joint employer of installation technicians who worked for a vendor contracted by Time Warner to provide cable installation services); Thornton v. Charter Commc'ns, LLC, Case No. 4:12CV479 SNLJ, 2014 WL 4794320, at *16 (E.D. Mo. 2014) (granting Charter Cable's motion for summary judgment and holding that Charter was not a joint employer of a third party vendor's cable installation technicians). The Parties thus seriously dispute the law that governs the issue of joint employment, which is further complicated by a split that currently exists between the Circuits.

Third, the value of immediate recovery outweighs the mere possibility of future relief after protracted litigation. As stated above, Comcast's liability for Icon Cable's alleged wage and hour violations is seriously disputed, and even if Plaintiff successfully contests Comcast's motion for summary judgment on the issue of joint employment and proceeds to the second stage of discovery, the Parties still will have to engage in

additional discovery, motions practice, and potentially even a days-long jury trial. The

Settlement Agreement compensates Class Members without delay based on estimated

alleged damages.  Indeed, those Participating Class Members who cash their checks

will almost certainly receive more than 100% of their alleged actual damages, as the

administrator will redistribute unclaimed funds to those Class Members who do

participate.  Ex.1 § 6.7.4; Ex. 4, McDermott Decl. ¶5.  Plaintiffs are low-wage workers

who value the promptest possible receipt of necessary wages.  This dissonance

between the litigation cost of determining joint employment on motion and the small

amount of money necessary to pay the class in full compelled settlement in this case.

As the limited value of the class-wide claim became clear to counsel, they moved

quickly to resolve the case.

Fourth, the Settlement Agreement was negotiated by experienced counsel and

its terms are fair and reasonable. Counsel for Plaintiff and Comcast have litigated

numerous FLSA collective actions and state law class actions in Colorado and around

the country. Ex. 2, Turner Aff. ¶¶ 7-9; Ex. 3 Milstein Decl.  ¶¶ 5-8.  In many of those

cases, counsel have negotiated settlements of the plaintiffs' claims on both an individual

and a class-wide basis, and are experienced in addressing the issues that arise in

complex litigation and settlements.  Thus, counsels' experience representing parties in

FLSA collective actions and Rule 23 class actions is substantial.  The parties believe

that the settlement is fair and reasonable.

In sum, because the Settlement Agreement is the product of fair and honest

arm's-length negotiations by experienced counsel and provides substantial relief to

Plaintiff and Class Members and eliminates the inherent risks both sides would bear if this complex and deeply contested litigation continued to resolution, the Court should approve the Settlement Agreement.  See Albu v. Delta Mech. Inc., No. 13-cv-03087-PAB-KMT, 2015 U.S. Dist. LEXIS 95485, at *9 (D. Colo. June 30, 2015) (citing Lynn's Food Stores, Inc., 679 F.2d at 1354) (noting that settlement agreements negotiated at arm's-length by experienced counsel are entitled to "a presumption of fairness").  By approving the Settlement Agreement, this Court would further the FLSA's policy rationale by allowing the Parties to fairly and reasonably resolve their claims.

**3.      The Incentive Payment to Named Plaintiff Ramin Shahlai is Reasonable.**

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action settlement.  Staton v. Boeing, 327 F.3d 938, 977 (9th Cir. 2003); see also Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc., No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) ("Courts have held that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class.").  When evaluating the reasonableness of an incentive award, courts may consider factors such as "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" Staton, 327 F.3d at 977 (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).

A $5,000 incentive award for Mr. Shahlai is reasonable in light of the significant time and effort he devoted to this litigation. Specifically, he produced responsive documents and information, was deposed for a full day, communicated regularly with class counsel, forewent work on three occasions to meet with class counsel, and provided other substantial assistance to the class. In light of these considerable efforts, the proposed $5,000 award is reasonable. See, e.g., Pliego v. Los Arcos Mexican Restaurants, Inc., 313 F.R.D. 117, 131 (D. Colo. 2016) (approving $7,500.00 incentive award for named plaintiff in wage-and-hour case as "appropriate and is commensurate with awards in similar cases"); Dorn v. Eddington Sec., Inc., No. 08 Civ. 10271(LTS), 2011 WL 9380874, at *7 (S.D.N.Y. Sept. 21, 2011) (holding that a service award of $10,000 to the plaintiff in a FLSA and state law wage class action was reasonable, stating "such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs."); Glass v. UBS Fin. Servs., Inc., 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (approving incentive awards of $25,000 to each named plaintiffs in a wage and hour case); Rausch v. Hartford Fin. Servs. Grp., 2007 WL 671334 (D. Or. Feb. 26, 2007) (approving $10,000 incentive award per named plaintiff).

### 4. The Parties Negotiated Reasonable Attorneys' Fees Separately and Without Regard to the Amount Paid to Class Members.

To approve the Settlement Agreement, this Court first must be satisfied that the award of attorneys' fees and costs is reasonable. Morton, 2017 WL 977812, at *2. As described below, the Settlement Agreement awards reasonable attorney's fees to

Plaintiffs' attorneys; these fees were negotiated separately and without regard to the amount paid to class members.

### A. Plaintiffs Request Reasonable Attorney Fees.[5]

After exercising considerable billing judgment, Plaintiffs' counsel billed a total of 642.71 hours on this matter, at attorney rates of $300.00 and $215.00 per hour, and paralegal rates of $90.00 per hour.  Ex. 2, Turner Decl.  at ¶¶ 11-13;  Ex. 3, Milstein Declaration at ¶¶ 10-11. Plaintiffs' counsel worked an additional 85.84 hours on this matter after the close of their prior petition submitted as Docs. 68-2 & 68-3.  Plaintiffs' counsel seek no additional compensation for this work performed after the initial settlement of the matter.  The revisions to the parties' Settlement Agreement did not increase attorney's fees.   Plaintiffs have excluded 112.8 of the hours that were billed by Mr. Turner and his co-counsel from their invoice, as arguably duplicative.  Plaintiffs have also incurred $10,634.01 in itemized litigation costs.  Ex. 2, Turner Decl.  ¶13; Ex. 3, Milstein Decl.  ¶12.  In sum, Plaintiffs' attorneys have billed $167,773.01 in fees and costs, and are recovering only $85,000 (or 50.66% of amounts billed) through this settlement.  Participating Plaintiff workers, by contrast, likely will receive over 100% of their potential damages through this settlement agreement.

Attorneys' fees under the FLSA are calculated in the same manner as those under the Civil Rights Acts, by multiplying the number of reasonable hours by a reasonable hourly rate. *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992).  This is

---

[5]    Plaintiffs seek their reasonable attorneys' fees and state the following in support of their application for an award of fees.  Comcast does not oppose Plaintiffs' request.

referred to as the "lodestar" method.  *Blum v. Stenson,* 465 U.S. 886, 888 (1984);

*Cooper v. Utah*, 894 F.2d 1169, 1171 (10th Cir. 1990).  Once calculated, this lodestar is

presumptively valid as the amount of fees to be awarded. *Robinson v. City of Edmond*,

160 F.3d 1275, 1281 (10th Cir. 1998).

Plaintiffs' counsel in this case have attached to this Motion their Declaration

itemizing their time expended as well as the expenses they incurred. Ex. 2, Turner Decl.

¶13; Ex. 3, Milstein Decl. ¶12.  The billing records set forth in Attachment 1 to the

Declaration of Andrew H. Turner and in Attachment 1 to the Declaration of Brandt

Milstein are accurate and contemporaneous records of counsels' reasonable and

necessary time spent litigating this case.  *Id.*   Counsel has taken care to exclude

duplication of effort and all unnecessary team efforts, including excluding 112.8

recorded hours from their invoice.  Ex 2 at ¶ 11.; Ex. 3 at ¶11.  The overall record in this

case and the Declarations demonstrate that the work billed by Plaintiff's attorneys was

reasonable and without duplication or waste.

### i.  Andrew H. Turner

Mr. Turner has practiced in the area of wage and hour litigation for sixteen years

and has extensive experience in complex class and collective action litigation

specifically.  Ex. 2 at ¶¶ 3; 6-8.  He has a successful record in his area of practice and

has taught and published in his field.  *Id* at ¶¶ 6-9.  Mr. Turner has exercised significant

billing discretion in submitting his fee petition.  *Id* at ¶ 11.

Mr. Turner seeks fees at the rate of $300/hour; this rate has previously been

approved by this Court on four occasions as being reasonable for Mr. Turner's work.

*Valdez v. Miracle Maids, LLC, et. al.*, 1:16-cv-00582-KLM, Doc. 20 pg. 6 (D.Colo. April

14, 2017)(Mix, J.); *Lucio v. Ranger Fire,* 1:15-cv-02123-PAB-MJW, Doc. 59 pgs. 8-9 (D.

Colo. March 13, 2017)(Brimmer, J.); *Reyes v. Durango Dining, LLC*, 1:15-cv-01116-

NYW, Docs. 28-2, 29 (D. Colo. Dec. 17, 2015)(Wang, J.); *Chavez v. Excel Servs.*

*Southeast*, No. 13-cv-03299-CMA-BNB, 2015 U.S. Dist. LEXIS 97638 at *17 (D. Colo.

July 27, 2015)(Arguello, J.).

### ii.      Ashley Boothby

Plaintiffs have exercised considerable billing discretion, excluding 79.4 of Ms.

Boothby's billed hours from her invoice, as they were arguably duplicative of the work of

her co-counsel; accordingly, Ms. Boothby has billed a reasonable 291.7 hours for her

work on this case.  Ms. Boothby billed her time on this litigation at a reasonable rate of

$215/hour. Ex. 2 ¶¶ 12-13.

### iii.      Brandt Milstein

Mr. Milstein has practiced in the area of wage and hour litigation for thirteen

years.   Ex. 3 at ¶ 5. He has a successful record in his area of practice and has taught

and published in his field. *Id* at ¶¶ 5-9. He billed a total of 81.51 hours on this litigation.

Mr. Milstein seeks fees at the rate of $300/hour.  This reasonable hourly rate has been

approved by this Court.  *Diaz v. Lost Dog Pizza, LLC, et al.,* Case No. 17-cv-2228-

WJM-NYW, ECF No. 46 ("The $300 hourly rate charge by class counsel is very

reasonable, considering the geographic market and counsel's experience."); *Lopez v.*

*Highmark Construction, LLP et al.*, Case No.: 17-cv-01068-CMA-MLC, ECF No. 38

("[T]he Court is familiar with the rates charged by lawyers in Colorado and concludes

that the $300 hourly rate charged by Plaintiffs' attorney is reasonable, especially considering counsel's experience and expertise in wage and hour litigation.").

Plaintiffs do not seek an adjustment of the lodestar rate in this case.  The attorneys' fees allocated in the Parties settlement agreement are appropriate.  After modest reduction for class administration costs and a representative incentive award, the recovery Plaintiffs will receive will total approximately $48,020.00.  That amount represents no less than 70.58% of maximum alleged actual damages alleged to have been suffered by the class.  Ex. 2, Turner Decl.  ¶14-16. The members of the FLSA Collective Action will be paid 100% of all allegedly unpaid wages and liquidated damages.  *Id;* Ex. 1 § 4.5(A).   Because not all class members will claim on the non-reversionary settlement fund, it is a virtual certainty that all Qualified Class Members who do claim Settlement Shares will receive in excess of 100% of their alleged actual damages.  By contrast, the proposed Settlement Agreement will pay Class Counsel just 50.66% of total amounts billed.  Courts have recognized that the low wages due the minimum-wage workforce necessarily depresses damages. The clear Congressional intent that this population be served by the private bar requires that attorneys' fees will often exceed the FLSA damages recovered.  *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) ("Courts should not place an undue emphasis on the amount of Plaintiff's recovery."); *Dressler v. Kan. Copters & Wings, Inc.*, No. 09-1016-MLB, 2010 U.S. Dist. LEXIS 141474, *6-8 (D. Kan. Dec. 22, 2010) (rejecting defendant's argument for reduction based on fees exceeding recovery).  The Parties' settlement agreement should be approved.

5.    **The Court Should Approve the Proposed Notice of Class Action Settlement.**

   A.    **The Proposed Settlement Procedure Provides Due Process Safeguards for the Absent Class Members.**

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state" the categories of information set forth in Rule 23(c)(2)(B)(i)–(vii).  If the Court grants preliminary approval of the Settlement, members of the Class will receive a Notice of Class Action Settlement by first-class mail and by email where available.  See Exhibit 1 ¶6.

The parties have also agreed that JND Class Action Administration shall serve as the Claims Administrator in this matter.  The Claims Administrator has been provided with last known mailing and e-mail address information for all putative class members, and will take customary measures to obtain more current address information; notices will be mailed by first-class mail and email with return service requested.  The Class Administrator will also re-send the notices to any forwarding addresses and/or attempt to research new addresses from which notices are returned.

   B.  **The Notice Clearly Explains the Settlement Terms**

The proposed Notice, attached as Ex. 1, Attachment A, provides detailed information regarding the claims asserted in this action, the terms and provisions of the proposed settlement, the settlement approval procedure, the procedure to file objections

to the settlement and to be heard at the final fairness hearing, and the procedure for opting out of the Settlement. As such, it should be approved as fair and accurate.

Those class members who timely request to be excluded will not be included in the settlement. Ex. 1 at 5.1. Those who do not opt out will release the claims asserted in the state-law Rule 23 claims. *Id* at 5.2, 9.1-9.3.

## IV. <u>CONCLUSION</u>

For all of the reasons stated above, Plaintiff Shahlai, Opt-in Plaintiffs Anderson, Bechtol, Hendrix, Leslie, Ramos and Wusow, and Comcast jointly request the Court grant the Parties' Joint Motion for Preliminary Approval of Settlement Agreement, and enter an order that:

1. Preliminarily approves the Settlement and Settlement Agreement as fair and reasonable;

2. Approves the form, contents and method of notice to be given to the Rule 23 Class as set forth in the Settlement Agreement; and

3. Schedules the fairness hearing.

Dated this 13th day of August, 2019.

Respectfully submitted,

BALLARD SPAHR LLP

s/ *Andrew H. Turner*

Andrew H. Turner
THE KELMAN BUESCHER FIRM
600 Grant Street, Suite 450
Denver, CO 80203
(303) 333-7751
aturner@laborlawdenver.com

Brandt P. Milstein
MILSTEIN LAW OFFICE
1123 Spruce St.
Boulder, CO 80302
(303) 440-8780
Brandt@milsteinlawoffice.com

s/ *J. Matt Thornton*

Steven W. Suflas
J. Matt Thornton
1225 17th Street, Suite 2300
Denver, CO  80202
Phone:  303-292-2400
Facsimile:  303-296-3956
suflas@ballardspahr.com
thorntonj@ballardspahr.com

Stephen J. Kastenberg
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
Phone:  215-864-8122
Facsimile:  215-864-9751
kastenberg@ballardspahr.com

***Attorneys for Plaintiff***

***Attorneys for Defendant Comcast Cable Communications Management, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of August, 2019, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system which will provide notice of same to the following:

Steven W. Suflas
J. Matt Thornton
1225 17th Street, Suite 2300
Denver, CO  80202
Phone:  303-292-2400
Facsimile:  303-296-3956
suflas@ballardspahr.com
thorntonj@ballardspahr.com

Stephen J. Kastenberg
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
Phone:  215-864-8122
Facsimile:  215-864-9751
kastenberg@ballardspahr.com

*Attorneys for Defendant Comcast Cable Communications Management, LLC*

*s/ Andrew H. Turner*
Andrew H. Turner
*Counsel for Plaintiffs*